IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2008

## ADAM BETTS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
No. 02-03911     James C. Beasley, Jr., Judge

**No. W2008-00302-CCA-R3-PC  - Filed June 17, 2009**

The petitioner, Adam Betts, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief.  The petitioner was convicted of first degree murder and is currently serving a sentence of life imprisonment with the possibility of parole.  On appeal, he argues that he was denied his Sixth Amendment right to the effective assistance of counsel, specifically arguing that trial counsel was ineffective in: (1) failing to investigate the case or hire an investigator,  to file certain pretrial motions, and to interview witnesses prior to trial; and (2) failing to litigate the motion to suppress the petitioner's statement.  After review, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which J.C. MCLIN and CAMILLE MCMULLEN, JJ., joined.

Charles S. Mitchell, Memphis, Tennessee, for the appellant, Adam Betts.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William S. Gibbons, District Attorney General; and Teresa McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

The relevant underlying facts of the case, as established on direct appeal, are as follows:

On May 16, 2001, the victim, Debra Walker, was at her mother's house on Hastings Circle in Memphis.  At around 9:30 that evening, the victim, her mother, Marlyn Walker, and her sister, Lakesha Walker, were in the living room, talking. The telephone rang, and Lakesha answered it.  There was a knock on the door, and the victim opened the door.  A man, later identified as the [petitioner], shot the victim

twice through the glass storm door, then ran off. The victim died from the gunshot wound she sustained.

Lieutenant Tracy Grosset of the Memphis Police Department received a tip through Crime Stoppers that the [petitioner] was the shooter and that he had admitted shooting the victim. On May 17, 2001, Lt. Grossett located the [petitioner], who agreed to talk to the officers at the police station. The [petitioner] waived his *Miranda* rights and gave a statement to the police. In his statement, he admitted that he knocked on the door at 668 Hastings Circle and shot the victim twice when she opened the door.

. . . .

Several witnesses, including the victim's mother, Marlyn Walker, as well as the [petitioner] and his mother, Sherry Betts, described an incident that had occurred in August of 2000. A young girl named Angel, who was a friend of the victim's family, got into a fight with the [petitioner's] cousin, named Erica Perkins. As a result, several members of the [petitioner's] family, including Erica, got into a truck and went to Hastings Circle, where the victim's family lived. The girls, who were approximately ten or eleven years old, fought again, and Erica "won" the fight. According to Ms. Walker, Erica and her group then left. However, the [petitioner] and his mother testified that Angel then ran inside the house and retrieved a knife. The [petitioner] testified that Angel lunged at Erica with the knife, but his mother omitted this detail in her testimony. They both testified that a lady, who had been standing nearby, pulled a pistol out of her purse and fired it into the air at least twice. At that point, the [petitioner's] family left and returned to their home.

According to Ms. Betts, later that evening, she saw a black van go by her house. She recognized the driver as the lady who had fired the shots in the air earlier that evening. She also saw Angel in the back seat. The [petitioner] testified that it was only ten minutes after they arrived at their apartment when he saw what he described as a "black Blazer" go by their residence. He also saw the little girl named Angel in the vehicle. The [petitioner] approached the vehicle and shots were fired out the passenger window. The [petitioner] estimated that between nine and twelve shots were fired. One of the bullets grazed the [petitioner's] face, and one of the bullets struck his mother in the chest.

*State v. Adam Betts*, No. W2003-01910-CCA-R3-CD (Tenn. Crim. App., at Jackson, July 20, 2004). Both the petitioner and his mother also gave testimony at trial regarding a continual pattern of harassment that occurred during the ten months after this incident. According to their testimony, different vehicles would drive by their home and the passengers would point and laugh. According to the petitioner, the driver of the vehicles was always the man that he had seen shoot his mother.

They both testified that they felt threatened by this harassment and that the police were called on multiple occasions. *Id*.

On the day prior to the petitioner's shooting of the victim, he and his mother were sitting outside when a van pulled up at their apartment. According to the victim, the man who had shot his mother and Angel was inside. The man got out of the van but left when the petitioner told his mother that this was the man who had shot her. Police were called but, according to the petitioner, did not respond. *Id*. The next morning, Ms. Betts testified that a man, whom she did not recognize, drove into her driveway, pulled a gun on her, and threatened her. She went inside the home and told the petitioner what had happened. *Id*.

Later that afternoon, the petitioner met several friends, including Cory Roberson, at a local pool hall. According to the petitioner, the group drank alcohol, smoked marijuana, and played dominos. When the petitioner informed Roberson that he "needed to do something about [the situation with his mother] tonight," Roberson agreed to let the petitioner borrow his gun. Later, Roberson drove the petitioner to Hastings Circle where, after donning a ski mask and a black hood, the petitioner approached the house and shot the victim. According to the petitioner, he "really wasn't planning to kill her. I was just trying to send a message to these people, you know, leave me and my family alone." *Id*.

Based upon these actions, the petitioner was indicted by a Shelby County grand jury for first degree murder and, following a jury trial, was found guilty as charged. He was subsequently sentenced to serve a term of life imprisonment with the possibility of parole. A panel of this court affirmed his conviction and sentence on direct appeal. *Id*. The petitioner then filed a *pro se* petition for post-conviction relief alleging, among other issues, that he was denied his Sixth Amendment right to the effective assistance of counsel. Following the appointment of counsel, an amended petition was filed, and a hearing was held at which the petitioner, his mother, and trial counsel testified.

The petitioner testified at the hearing that trial counsel was hired to represent him beginning at the general sessions level. According to the petitioner, trial counsel came to the jail only one time prior to trial in order to interview him. He further testified that trial counsel failed to: provide him with discovery; ask about possible witnesses; interview his family members; hire an investigator; explain the elements of the charged offense; and argue the motion to suppress the petitioner's statement, which was the only motion filed pretrial by counsel.

The petitioner stated that he had been drinking alcohol and smoking marijuana on the day he gave his statement to police. However, he acknowledged that he did not inform the police or trial counsel of this, stating that they did not ask. The petitioner also testified that he had dropped out of school in the seventh grade at age sixteen and had repeated the third grade three times. He stated that trial counsel did not request any sort of mental evaluation prior to trial. He also testified that trial counsel failed to prepare him to testify and failed to inform him that he had the right not to do so.

The petitioner stated that he believed his testimony prejudiced him at trial and that he only testified based upon trial counsel's advice.

In response to questioning by the post-conviction court, the petitioner again testified as to the facts of the case, specifically acknowledging that he had shot the victim. Despite his assertion that he only testified because trial counsel told him he had no defense otherwise, the petitioner acknowledged that he wanted the jury to know that he was sorry and that there was a justifiable reason for shooting the victim. He then proceeded to testify that his statement had been coerced by the police, testifying that the detectives informed him that he would get a plea if he talked. The petitioner testified that he later swallowed carpet cleaner in an attempt to kill himself after the detectives left the room. According to the petitioner, upon the detectives' return, they informed him that they would not call paramedics unless he gave a statement. The petitioner testified that he informed trial counsel of these events.

The next witness to testify was the petitioner's mother who stated that trial counsel did nothing to prepare her prior to her trial testimony. She acknowledged testifying at trial regarding the situation between the families and the harassment they endured. Finally, she testified that she was unaware of the petitioner ever receiving treatment in a mental health program or seeking medical assistance for a mental illness.

Finally, trial counsel testified and contradicted the petitioner's testimony in several regards. Trial counsel testified that from the beginning of his representation, he believed that the best defense to pursue was one of state of mind in hopes of securing a conviction for a lesser included offense. He felt it was imperative to get the evidence before the jury regarding the prior actions of the victim's family and the ongoing "feud." He stated that he felt the best way to ensure this was for the petitioner to testify and that, after speaking with the petitioner, he felt he would be a good witness. Trial counsel acknowledged that he had filed a motion to suppress, which was not argued. He stated this was a tactical decision because he felt that allowing the statement to be introduced to the jury supported the petitioner's testimony and version of events. Moreover, he denied that the petitioner had ever informed him of the suicide attempt or coercion by police in procuring the statement.

Trial counsel testified that he went to the jail and met with the petitioner three or four times prior to trial. He acknowledged that he did not interview all the witnesses listed in the indictment but stated that he was basically aware of what they would say from the discovery materials and the petitioner's statements. He specifically testified that he did not interview Cory Roberson based upon what he read in the petitioner's statements. Mr. Roberson did not testify at trial. However, trial counsel stated that Mr. Roberson, whom he believed would be a damaging witness to the case, probably would have testified at trial if the petitioner's statement had been suppressed, as the statement was the only evidence placing the defendant at the scene absent Mr. Roberson's testimony. Counsel stated that it was his normal policy to interview witnesses who may be testifying. According to trial counsel, he saw no need for a mental evaluation and was not advised of any potential problems. Finally, trial counsel acknowledged that he did not file any pretrial motions but stated that he was given discovery by the State, as was their policy.

-4-

After hearing the evidence presented, the post-conviction court found that the petitioner failed to establish his claim of ineffective assistance of counsel. The court entered an order denying relief. The petitioner has now filed timely notice of appeal with regard to that denial.

## Analysis

On appeal, the petitioner asserts that the post-conviction court erred in denying his petition for post-conviction relief. Specifically, he contends that the court erred in finding that trial counsel was not ineffective based upon: (1) his failure to investigate and hire an investigator, to file pretrial motions, and to interview witnesses; and (2) his failure to litigate the motion to suppress the petitioner's statement.

To succeed on a challenge of ineffective assistance of counsel, the petitioner bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). The petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the petitioner must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight; may not second-guess a reasonably based trial strategy; and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id.* at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law* are reviewed under a *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id.*

## I. Failure to Investigate, File Pretrial Motions, and Interview Witnesses

First, the petitioner contends that trial counsel breached his duty to the petitioner by failing to investigate and hire an investigator, file basic pretrial motions, and interview witnesses. Specifically, the petitioner contends that trial counsel was ineffective for failing to file a Rule 16 discovery motion, a motion for exculpatory evidence, or a Rule 12(b) motion. According to the petitioner, because the discovery rule is only triggered by the petitioner's request, trial counsel's decision to simply rely upon the State to give him access to the file and to provide any exculpatory evidence constituted deficient performance. Moreover, he asserts that a Rule 12(b), a motion for intention to use evidence, would have forced the State to disclose what specific evidence it intended to use against the petitioner at trial, which would have assisted in the development of a defense strategy. The petitioner also points to trial counsel's specific admissions that he failed to interview witnesses listed on indictment, as well as certain witnesses mentioned in the petitioner's confession, namely Cory Roberson. Finally, he challenges trial counsel's decision to not hire an investigator, asserting that an investigator could have interviewed friends and associates regarding the petitioner's drug and alcohol use prior to his giving a statement to the police, could have researched records regarding the petitioner's alleged suicide attempt prior to the confession, and could have reviewed school and medical records for evidence of a mental defect.

In denying relief upon these assertions, the post-conviction court found, in relevant part, as follows:

[Trial counsel] testified he knew what the issues were. He knew about the statement given by [the petitioner]. He knew about the history between these two families, the feuding that went on between the two families, and he had talked with the mother, and apparently had talked with the nieces, or whoever, whatever their testimony was, but you know, was there a need to go talk to the other parties involved, Cory Roberson, maybe I don't know.

But it would appear to me that Cory Roberson could very easily have been charged as an accessory under the facts as I understood them from [the petitioner's] statement, and I could see how he could be a potentially bad witness for the defense if he were put on the witness stand. So whether or not failure to try to talk to him amounts to ineffective assistance of counsel, I would have to look and see that.

Apparently, [trial counsel] knew what he need to know to put his case on, and I don't know a whole lot of defense lawyers that frankly talk to police officers before trial. I know this issue comes up all the time in post-convictions and it's always asked, but I frankly don't know a whole lot of police officers that would talk to a defense lawyer if they ask, but I guess you could make the inquiry. . . .

You know, I - - [trial counsel] says he talked to [the petitioner] on several occasions. [The petitioner] says he only talked to him once. I find that somewhat hard to believe. [Trial counsel] had full access to everything he needed to know and indicated that he talked to him on several occasions.

. . . .

And then with regard to a mental evaluation, no mental evaluation, . . . there's something about the integrity of what we do in this profession that filing frivolous motions just to file a frivolous motion to me is not good - - is not a good lawyer.

Now, it may be the right thing to do under the ABA standards and it may be the thing that we're required to do now for nothing else to protect ourselves as attorneys, but to file a motion to have a man evaluated at a mental health institute by a psychologist when there's absolutely no basis for it, when there's not history, there's no indication; there's no signs.

. . . .

And so to say that a lawyer is ineffective because he doesn't file a frivolous motion, I just - - I have a hard time accepting that. You know, I don't - - the fact that [the petitioner] has a very minimal education I'll be honest with you. I felt [the petitioner] and his testimony up here, you know, as articulate and able to communicate his thoughts.

And, frankly, you know when I - - I went over the facts with him what, you know, generally. I know not in great detail but generally. I thought he explained himself, explained why, explained his actions, and why he did what he did understanding that it was wrong, and it was a bad decision, but you know, he gave a valid explanation for it.

. . . .

[L]egally I do not see - - I'm not convinced that [trial counsel] was lacking in his efforts. I'm not convinced that any further discussion with any other potential witnesses would have changed, A, his theory of the case, that being that this was not a premeditated act but that it was something less.

. . . .

I can't see that there's anything else that I can anticipate, based on the proof I've heard, that [trial counsel] could have done differently, and a few things that maybe could have been done a little bit differently I do not feel, based upon the facts of the case, would have changed the verdict.

. . . .

So I'm charged with determining whether or not [trial counsel's] actions were effective or not effective did those actions impact or affect the outcome of the jury and the verdict, and in my opinion, they did not. I find that [trial counsel's] actions were proper and effective as an attorney and that he had a theory of the case, in my opinion, a viable theory of the case that he successfully got his theory of the case in front of the jury that he made a determination that his client was a good witness, and he got all that in front of the jury, and it's just was not successful, but not for lack of effort.

We find nothing in the record which preponderates against the post-conviction court's findings. With regard to the alleged failure to file motions for discovery or exculpatory evidence, the petitioner has failed to put forth any evidence that he suffered prejudice as a result. He has presented no proof that trial counsel was not given all materials in discovery by the State or that he did not receive any exculpatory information. While it might have been the better practice to file such a motion, trial counsel testified that open-file discovery was the policy, and the post-conviction court found that trial counsel had access to all he needed to prepare for the case. Absent proof that trial counsel was not given full discovery, the petitioner has failed to establish his entitlement to relief.

Likewise, with regard to the allegation that trial counsel failed to interview the witnesses listed on the indictment, as found by the post-conviction court, the petitioner has failed to establish prejudice as he has in no way shown that the interview would have changed the trial strategy which was pursued. Trial counsel testified that he was basically aware of what the witnesses would testify to. With regard to trial counsel's failure to interview Cory Roberson, the petitioner has failed to carry his burden by his failure to present Mr. Roberson at the post-conviction hearing, so, as noted by the post-conviction court, we are unable to assume what his testimony might have been. It is the petitioner's burden to present such witnesses. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

Finally, we agree with the post-conviction court that the petitioner has failed to establish that trial counsel was ineffective in failing to investigate or hire an investigator. The claims he asserts could have been investigated were the petitioner's alleged mental deficiencies, his consumption of alcohol and drugs on the day of his interview, and the alleged coercion of his statement and suicide attempt. These claims were either rejected, based upon the post-conviction court's credibility determination of the petitioner's testimony, or not made known to trial counsel. Trial counsel testified that he was not advised of nor did he see any signs of mental problems. Moreover, he testified that he was not aware of any coercion or suicide attempt in relation to the petitioner's statements. Additionally, the petitioner acknowledged that he did not inform trial counsel or the police that he had ingested drugs or alcohol on the day of his arrest. Trial counsel cannot be faulted for failure to investigate what the petitioner never made him aware of. The petitioner bears some responsibility in communicating the facts of the case to trial counsel. Thus, after review, we conclude that nothing preponderates against the post-conviction court's findings.

## II. Motion to Suppress

Next, the defendant contends that trial counsel was ineffective for failing to pursue and argue the motion to suppress the defendant's statement. He asserts that

[a]ssuming *arguendo* that trial counsel could have shown in a suppression hearing the following: (1) that [the petitioner] had a sixth grade education; (2) that [the petitioner] had been smoking marijuana prior to his confession; (3) that [the petitioner] had been drinking alcohol prior to his confession; (4) that [the petitioner] drank carpet cleaner prior to his confession; and that (5) homicide detectives said that [the petitioner] had to provide a statement before aid would be rendered, [appellate] counsel strongly believes that [the petitioner's] confession would have been suppressed by the trial court. Continuing this line of reasoning, it is likely that without [the petitioner's] statement, the State of Tennessee would not have sufficient evidence to sustain a conviction against [the petitioner].

In denying relief on this contention, the post-conviction court found:

As far as the statement's concerned, frankly, I don't see a whole lot in here that's - - you know, I haven't heard a basis to find that there would be - - this statement would have been suppressed if these issues had [ ]gone forward. To be honest with you, I don't know that there is a valid basis for it now.

This new thing that [the petitioner] has thrown in here about drinking some kind of poison and not being taken to the hospital until he finished giving his confession, you know, that's nowhere to be found in anything I see, and I just - - I - - I find it really almost beyond my comprehension that if [trial counsel] were told that his client drank some poison and while he's in the police department interview room and the police called the paramedics from the MED and refused to let them come and treat the man and taken him to the MED until he finished giving a confession, that's really hard for me to imagine that that wouldn't show up somewhere in some kind of document, somewhere, A, in the file, B, in [trial counsel's] motion to suppress.

Knowing [trial counsel] the way I know him that would have been in there, and I even looked through the trial [transcript], and there's nothing - - no mention in the trial. In the statement from the officer who took the statement, there's nothing about that, nothing from [the petitioner]. There's nothing anywhere about that, and so I don't know if there's anything in the state's file about that, but there's nothing anywhere other than what I've heard today.

And so I don't have any basis for believing that that frankly is true. I just - - there's nothing in front of me that gives me cause to believe that that's true.

. . . .

I did not see anything in the trial transcript that connected [the petitioner] to this, at least my perusal, other than his statement. The witnesses who were there when Ms. Walker were shot were not able to make an identification. They were not able to give any - - didn't look to me like any descriptions. . . . So I would think that this statement obviously was very damning in and of itself.

But, again, I don't know that there's a legal basis for having it suppressed. At least, I haven't heard anything as to how or why it would have been suppressed, and so the fact that nothing was done on it other than [trial counsel] made a decision that even if he had the ability to get it suppressed, he chose not to do so because he felt it was the best opportunity to put again his theory of the case by showing overall because [the petitioner] apparently has laid out the history of this relationship in that statement and felt that it would go better for the jury to hear that than not to hear it, to hear the defense's version of why this happened than not to hear it.

. . . .

But I don't see anything that I've heard that would give me reason to believe that the statement should have been suppressed or would have been suppressed. So I'm not willing to say that his failure to go forward with that motion to suppress impacted or affected the outcome of the case.

The petitioner argues that trial counsel performed deficiently by failing to pursue an evidentiary hearing on a motion to suppress his statement. In order to be entitled to relief on this assertion, the petitioner must show by clear and convincing evidence that (1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. *Vaughn v. State,* 202 S.W.3d 106, 120 (Tenn. 2006) (citing *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064-65). The petitioner has failed to establish either of these factors. Indeed, the post-conviction court's findings are clear that a motion to suppress would not have prevailed, and we find nothing in the record to preponderate against that finding. Trial counsel cannot be considered ineffective for failing to make or pursue a motion that would have been meritless.

In his argument, the petitioner asks us to assume "*arguendo*" that he believes the motion to suppress would have been granted if certain facts had been established. However, it is not the province of this court to assume "facts." The only evidence of the facts presented by the petitioner upon which he wishes this court to base this determination was the testimony of the petitioner. Notably, the post-conviction court specifically found that the petitioner's testimony, with regard to his alleged suicide attempt and the detectives' subsequent behavior, was not credible. Issues of witnesses' credibility and the weight to be given their testimony are to be resolved by the trier of fact. *See Henley*, 960 S.W.2d at 579. It is not the province of this court to reweigh such determinations.

-10-

Moreover, as an additional ground for denial of relief, the petitioner has failed to show that the evidence adduced at the post-conviction hearing preponderates against the court's finding that trial counsel's failure to pursue the motion to suppress was part of a reasonable, informed trial strategy based on adequate preparation. *See* T.C.A. § 40-30-103; *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). Trial counsel specifically testified that it was a matter of trial strategy to allow the statement into evidence as it bolstered the theory of defense in the case by allowing the petitioner to get before the jury his state of mind at the time of the crime based upon the previous shooting of himself and his mother, as well as the repeated harassment by members of the victim's family. Having previously concluded that trial counsel adequately investigated and prepared prior to trial, we may not call into question matters of trial strategy in hindsight. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the petitioner is not entitled to relief.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE